FILED
2020 Sep-03  AM 09:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA**

| | |
|---|---|
| **BOARD OF DENTAL EXAMINERS** ) | |
| **OF ALABAMA, and its members in their** ) | |
| **official capacities,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. _____** |
| ) | |
| **FEDERAL TRADE COMMISSION,** ) | |
| ) | |
| **Defendant.** ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Pursuant to Fed. R. Civ. P. 65 and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*., Plaintiffs the Board of Dental Examiners of Alabama, and its members in their official capacities ("Plaintiffs" or the "Board") bring this action for declaratory judgment and injunctive relief against Defendant Federal Trade Commission ("Defendant" or the "FTC").

**INTRODUCTION**

1.      The Board seeks a judicial declaration that the State of Alabama is free to regulate the health, safety, and welfare of its citizens, including by establishing requirements for the practice of dentistry within this State, without unlawful interference from the federal government or its regulatory agencies, including the FTC, under the guise of Sherman Antitrust Act scrutiny, 15 U.S.C. § 1, *et. seq.*, where, as here, the State of Alabama has put in place adequate procedures, including a substantive antitrust review process, to ensure that the Board is acting pursuant to clearly articulated policies and is actively supervised by the State as provided in *North Carolina State Bd. of Dental Examiners v. F.T.C.*, 574 U.S. 494 (2015) ("*N.C. Dental*").

2.      On April 17, 2020, the FTC issued a Civil Investigative Demand ("CID") to the Board, requesting information relating to the passage and subsequent plain enforcement of

Alabama state regulations that prohibit the taking of "digital images" or "digital impressions" of a patient's mouth without the "direct supervision" of a dentist on-site and physically present.[1] Because these regulations were promulgated with the clear imprimatur of the State of Alabama under procedures designed to insulate the Board and its members from Sherman Act scrutiny— indeed, its enabling statute directly references the State's desire to immunize Board members from Sherman Act liability for the potential anticompetitive effects of its actions—the Board is immune from Sherman Act liability, and cannot now be scrutinized by the federal government for its passage and plain enforcement of these regulations.

3.      Accordingly, the Board requests this Court to enjoin the FTC's CID and civil investigation and to declare that the Board is under no obligation to respond to the FTC's CID because, as an arm of the State, the Board is immune from FTC scrutiny and cannot be commanded to submit to the FTC's investigation because "nothing in the language of the Sherman Act or its history . . . suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature." *Parker v. Brown*, 317 U.S. 341, 350–51 (1943).

## **PARTIES**

4.      Plaintiffs, the Board of Dental Examiners of Alabama and its members in their official capacities, is a state agency established by the State of Alabama "to carry out the purposes and enforce the provisions of [the Dental Practice Act of Alabama]." *See* Ala. Code § 34-9-40(a) (1975). "The board . . . consist[s] of six dentists . . . and one dental hygienist," each of whom are citizens of Alabama. *See id*.

---

[1] Because the FTC's CID closely tracks the subject matter and discovery in SmileDirect's action against the Board and its members, in *D. Leeds, et al. v. Adolphus Jackson, et al.*, Case No. 2:18-cv-01679-RDP, in the United States District Court for the Northern District of Alabama, which is currently pending on interlocutory appeal before the Eleventh Circuit Court of Appeals, the Board files this action as a related proceeding.

5.     By statute, the Alabama Legislature declared that the Board "may define and regulate the practice of dentistry and dental hygiene in a manner that prioritizes patient health, safety, and welfare, even if the rule has elements that appear anticompetitive or have an anti-competitive effect when the effect on public health, safety, and welfare is clearly demonstrated and documented by the board." *Id*. at § 34-9-43.2(b).  The State of Alabama further declared: "Nothing in this section shall be construed to constrict or expand the current duties and responsibilities of the members of the board in any context outside of federal or state anti-trust immunity beyond that which existed prior to the ruling in the United States Supreme Court decision *N.C. State Bd. of Dental Examiners v. FTC*, 135 S. Ct. 1101 (2015)." *Id*. at § 34-9-43.2(e).

6.     The Eleventh Circuit has held that it is "well-settled that Eleventh Amendment immunity bars suits brought in federal court when the State itself is sued and when an 'arm of the State' is sued." *Versiglio v. Bd. of Dental Examiners of Ala.*, 686 F.3d 1290, 1291 (11th Cir. 2012) (quoting *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003)).  Further, "[o]n May 25, 2012, the Alabama Supreme Court issued a decision holding that the Board is in fact an arm of the state and is entitled to immunity from suits in Alabama state courts.  In so holding, the Alabama Supreme Court conclusively held, 'that the Board is "an arm of the state" rather than a mere "franchisee licensed for some beneficial purpose . . . ."  Therefore, the Board is entitled to immunity.'" *Id*. at 1292 (citing *Ex parte Bd. of Dental Exam'rs of Ala.*, 102 So. 3d 368 (2012)).

7.     Defendant, the Federal Trade Commission ("FTC" or the "Commission"), is an independent administrative agency established by the United States Congress with the capability of being sued under the Constitutional and statutory provisions hereinafter alleged.

8.     Congress has granted the FTC jurisdiction to "prevent persons, partnerships, or corporations . . . from using unfair methods of competition."  15 U.S.C § 45(a)(2).  However, the

FTC has no jurisdiction or authority to take action against a state (or its *bona fide* state agencies), and Congress has never acted or implied an intent to enlarge the FTC's authority to extend over states' regulation of the practice of dentistry.  Congress has never authorized the FTC to use its antitrust enforcement power to preempt state statutes.  Congress has never authorized the FTC to regulate state statutory non-price and non-commercial restrictions, such as are at issue in this matter.

9.      No Supreme Court opinion has held that the FTC has jurisdiction over a *bona fide* state agency; has jurisdiction to preempt a clear state statute; or has jurisdiction to regulate non-price and non-commercial restrictions.[2]

10.      The FTC is empowered to initiate administrative proceedings by issuing administrative complaints only if it has "reason to believe that any such person, partnership, or corporation has been or is using any unfair method of competition . . . ." 45 U.S.C § 45(b).

11.      The federal government's sovereign immunity does not preclude this suit because this is "an action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority."  5 U.S.C. § 702.

12.      The FTC has commenced a civil investigation into the acts of the Board, but that investigation has not resulted in any sort of complaint or enforcement action.  The FTC issued a civil records subpoena to the Board on April 27, 2020 as part of its investigation.  The Board has not responded to that subpoena.

---

[2] "We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature." *Parker*, 317 U.S. at 350–51.

## JURISDICTION AND VENUE

13.     This action arises under the Constitution and laws of the United States, and this Court has federal question jurisdiction over this action pursuant to Article III of the Constitution and 28 U.S.C. § 1331.

14.     The FTC Act contains no waiver of sovereign immunity by Alabama or any other state, as is unmistakably clear in the language of the statute.

15.     The Board has suffered and continues to suffer a concrete and particularized harm by being served with the FTC's April 17, 2020 CID and by being required to spend time and money collecting documents and information to respond to the FTC's "specifications," including interrogatories and requests for documents.

16.     Without waiving its sovereign immunity under the Tenth Amendment, the Board seeks an injunction against the FTC's CID and a judicial determination that the Board cannot be compelled to respond to the FTC's CID; that it is immune from FTC scrutiny under the Sherman Act for these purposes; and that the Board is further immune from such scrutiny under the United States Constitution, including Article I, Section 8 (the Commerce Clause); and the Tenth Amendment.

17.     This action is further brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

18.     Venue is proper in the Northern District of Alabama under 28 U.S.C. § 1391(b)(2) because the Board's actions and the FTC's investigation of the Board's actions took place in Birmingham, Alabama.

## FACTUAL BACKGROUND

19.     The Dental Practice Act of Alabama governs the practice of dentistry in the State of Alabama.  *See* Ala. Code §§ 34-9-1, *et seq*.

20.     Section 34-9-40(a) establishes and vests the Board of Dental Examiners of Alabama with authority to "carry out the purposes and enforce the provisions of this chapter."  *See* Ala. Code § 34-9-40 (1975).

21.     The Act further describes the powers and responsibilities of the Board, including, in relevant part, to "(4) Make rules and regulations regarding sanitation . . . (7) Conduct hearings and proceedings to impose the penalties specified in Section 34-9-18 . . . (9) Investigate alleged violations of this chapter and institute or have instituted before the board or the proper court appropriate proceedings regarding the violation . . . (10) Adopt rules and regulations to implement this chapter," and so forth.  *See* Ala. Code § 34-9-43.

22.     In 2010, the Alabama Legislature amended the Dental Practice Act to cover anyone who "[d]irectly or indirectly, by any means or method, makes impression of the human tooth, teeth, jaws, or adjacent tissue, or performs any phase of any operation incident to the replacement of a tooth or any part thereof."  Ala. Code § 34-9-6(2) (1975).

23.     The Dental Practice Act further defines the practice of dentistry as anyone who "[u]ses a roentgen, radiograph, or digital imaging machine for the purpose of making dental roentgenograms, radiographs, or digital images, or who gives, or professes to give, interpretations or readings of dental roentgenograms, radiographs, or digital images, or radiographic or roentgen therapy."  Ala. Code § 34-9-6(7) (1975).

24.     In 2015, the Supreme Court decided *N.C. Dental*, which changed the landscape for state agency rulemaking.  *See N.C. Dental*, 574 U.S. 494.

6

25.     In response, in 2018, the Alabama Legislature enacted Ala. Code § 34-9-43.2 to clarify that its delegation of regulatory authority to the Board and other state agencies is designed to comply with "the United States Supreme Court decision [*N.C. Dental*]." *See id.*

26.     The Alabama Legislature also put in place a number of procedures by which it reviews the substance of and either accepts, modifies, or rejects a proposed regulation of the Board. *See* Ala. Code § 41-22-23.  During the entirety of this substantive antitrust review process, the Alabama Legislature maintains authority to veto or modify a proposed regulation.  *See id.*

27.     After the Alabama Legislature modified its antitrust review procedures, the Board amended Ala. Admin. Code r. 270-x-3-.10 ("Duties of Allied Dental Personnel") (the "Regulation"), and in particular subparts (2)(k) and (2)(o), which, prohibit "[a]llied dental personnel," including "dental hygienists, dental assistants and dental assistants," from, in part, making "digital impressions" or "digital images" of a patient's teeth without the "direct supervision" of a dentist.  *See* Ala. Admin. Code r. 270-x-3-.10; *see also* Ala. Code § 34-9-6(2) and (7).

28.     Further, by regulation, "[d]irect supervision is defined as supervision by a dentist who authorizes the intraoral procedure to be performed, is physically present in the dental facility and available during performance of the procedure, examines the patient during the procedure and takes full professional responsibility for the completed procedure." Ala. Admin. Code r. 270-x-3-.06 ("Direct Supervision Defined").

29.     The Regulation was initially submitted to the Administrative Procedure Office of the Legislative Services Agency, Legal Division, for review and approval.  During the review and approval process, the Regulation received three independent, merits-based reviews before it was approved.  First, it was published in Volume XXXVI, Issue No. I, of the Administrative Monthly

7

for a minimum of 35 days.  Second, on December 8, 2017, the Legislative Reference Service conducted an independent antitrust review of the merits of the Regulation in accord with Ala. Code § 41-22-22.1.  *See id*. at 13–15.  Finally, the Legislative Services Agency conducted an independent review of the merits of the Regulation and concluded, in relevant part, that it would not significantly harm or endanger the public health, welfare, or safety, that it would not have the effect of directly or indirectly increasing the costs of any goods or services involved, and that it would not have an economic impact.  *See id*.

30.    Public comment was invited during this process, but SmileDirectClub, LLC ("SmileDirect") did not participate in that process.

31.    In 2018, the Board became aware that SmileDirect, an out-of-state company, was using local store fronts, called "SmileShops," to take digital images and digital impressions of its patients' teeth through the use of an iTero device, without the direct supervision of a dentist.

32.    The official iTero® Element Orthodontic Training Video and iTero® Element™ Orthodontic Patient Video placed on YouTube by the manufacturer of the device shows the intra-oral, clinical nature of this digital imaging procedure.



iTero® Element™ Orthodontic Training Video

*See* https://www.youtube.com/watch?v=hDzBjbqD-KI.

8

33.     Digital images are self-evidently being created—indeed, the patient video begins with the narration: "Every smile tells a story and every story creates an impression.  That's why we've invested in the latest *digital imaging technology*."[3]   Despite the intra-oral digital imaging taking place, no licensed dentist was on-site at its Birmingham-based SmileShop, in clear violation of Alabama law.

34.     Accordingly, on September 20, 2018, the Board sent a cease and desist letter to SmileDirect because its SmileShop did not have a dentist physically present on-site while these intra-oral digital imaging procedures were taking place.  This was a plain enforcement of its own regulations promulgated pursuant to the Dental Practice Act of Alabama and under the clear articulation and active supervision of the State of Alabama.

35.     Shortly after being served with the Board's cease-and-desist letter, on October 12, 2018, SmileDirect filed a complaint in this court, asserting various claims for constitutional and Sherman Act violations.  *See D. Blaine Leeds, DDS, et al. v. Board of Dental Examiners of Alabama, et al.*, Case No. 2:18-cv-01679-TMP, in the United States District Court for the Northern District of Alabama, at Doc. 1.  The Board filed a motion to dismiss, which was granted in substantial part, but denied as to SmileDirect's dormant Commerce Clause and Sherman Act claims.  *See id*. at Docs. 57–58.  The Board subsequently appealed the denial of its motion to dismiss SmileDirect's Sherman Act claim to the Eleventh Circuit.  *See id*. at Doc. 75.  That appeal has been briefed, argued, and is currently pending interlocutory review.

36.     On April 17, 2020, while the SmileDirect matter was pending interlocutory review before the Eleventh Circuit, the FTC issued a Civil Investigative Demand ("CID") to the Board, requesting information and documents pertaining to the passage and the Board's plain enforcement

---

[3] https://www.youtube.com/watch?v=Ca69CuWqHCw.

of the regulations at issue in the SmileDirect matter which prohibit the taking of "digital images" or "digital impressions" of a patient's teeth without the "direct supervision" of a dentist, on site and physically present.

37.     The FTC has only served a CID on the Board.  The Board has not responded to the CID.

## COUNT 1
## DECLARATORY JUDGMENT AGAINST THE FTC

38.     The Board incorporates all previous paragraphs as if fully set forth herein.

39.     An actual and justiciable controversy exists between the Board and the FTC regarding the FTC's requests pursuant to its CID.

40.     The CID imposes a definite and concrete injury to the legal interests of the Board as a sovereign entity.

41.     The FTC's CID seeks to require the Board to respond to "specifications," including interrogatories and requests for production of documents, relating to the Board's promulgation and plain enforcement of the Regulation.

42.     The Board is under no obligation to respond to the FTC's CID.

43.     The Board is constitutionally and otherwise immune from and therefore not subject to Sherman Act scrutiny with respect to its promulgation or enforcement of the Regulation.

44.     The Board does not otherwise consent to the FTC's investigation of its conduct and requests this Court to intervene on its behalf to declare the FTC's actions unlawful.

## COUNT II
## INJUNCTION AGAINST THE FTC

45.     The Board incorporates all previous paragraphs as if fully set forth herein.

46.     The FTC has served a CID on the Board which requires the Board to answer various specifications, including interrogatories and request for production.

47.     The FTC's CID specifications will result in the expense of time and money to review the CID, gather responsive information and documents, and produce them to the FTC in a timely manner.

48.     An injunction to enjoin the FTC from enforcing the CID or pursuing further investigation is necessary to prevent such harm.

49.     The Board is likely to succeed on the merits that, as a sovereign entity, it is immune from Sherman Act scrutiny by the FTC.

50.     The Board is likely and is in fact suffering irreparable harm.  The injury the Board suffers as a result of the FTC's CID and related investigation are great and immediate, for which there is no plain, speedy, and adequate remedy at law or otherwise.

51.     The balance of equities tips in favor of enjoining the FTC's CID and investigation because the federal government's interest in promoting competition is more than outweighed by the burden on the sovereign interests of the State of Alabama, particularly where, as here, the State of Alabama put in place adequate antitrust review procedures to monitor and actively supervise the Board's actions; the Regulation at issue—a provision that bears on the public health and welfare of Alabama citizens—bears the imprimatur of the State of Alabama; the Board is an "arm of the state"; and the Alabama Legislature desired to immunize the Board from Sherman Act scrutiny.

52.     The injunction is in the public interest because a State cannot be required to submit to an investigation of the federal government from which it is immune.

53.     The Board will provide security in an amount the Court considers proper in accord with Fed. R. Civ. P. 65(c).

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court enter judgment as follows:

A.     For an Injunction enjoining the FTC from requiring the Board to respond to its CID or further investigation;

B.     For a Declaratory Judgment stating the following:

  i.     That the Board cannot be compelled to respond to the FTC's CID;

  ii.    That the Board is constitutionally and otherwise immune from liability under the Sherman Act for the Board's promulgation or plain enforcement of the Regulation;

  iii.   That the Board cannot be commanded to submit to the FTC's investigation because "nothing in the language of the Sherman Act or its history . . . suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature," *Parker v. Brown*, 317 U.S. 341, 350–51 (1943);

  iv.    That the FTC may not hinder or abrogate these Alabama regulations;

  v.     That a speedy hearing be pursued on this matter pursuant to Rule 57 of the Federal Rules of Civil Procedure; and

  vi.    That the Board is entitled to such other or alternative relief as the Court may deem appropriate under the circumstances or as consistent with the claims and causes asserted in this action.

Respectfully submitted this 2nd day of September, 2020.

                              */s/ R. Ashby Pate*

12

One of the Attorneys for Plaintiffs
The Board of Dental Examiners of Alabama and its
members in their official capacities

OF COUNSEL
Jackson R. Sharman, III (SHA048)
*jsharman@lightfootlaw.com*
R. Ashby Pate (PAT077)
*apate@lightfootlaw.com*
Logan T. Matthews (MAT068)
*lmatthews@lightfootlaw.com*
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 20th Street North
Birmingham, Alabama 35203

## JURY DEMAND

Plaintiffs request a trial by jury.

/s/ R. Ashby Pate
One of the Attorneys for Plaintiffs
The Board of Dental Examiners of Alabama and its
members in their official capacities

**Plaintiffs Will Serve Defendant as Follows:**

*By Certified Mail:*
United States Attorney's Office
c/o Prim F. Escalona, Interim United States Attorney for the Northern District of Alabama
1801 4th Avenue North
Birmingham, Alabama 35203

United States Attorney's Office
c/o Civil Division, Process Clerk
1801 4th Avenue North
Birmingham, AL 35203

United States Attorney General's Office
c/o Attorney General William P. Bar, Attorney General of the United States of America
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Federal Trade Commission
c/o Joseph Simons, Chairman
600 Pennsylvania Avenue, NW
Washington, DC 20580