UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BOARD OF DENTAL EXAMINERS OF ALABAMA,** | } } } |
| Plaintiff, | } } |
| v. | } Case No.: 2:20-cv-1310-RDP } |
| **FEDERAL TRADE COMMISSION,** | } } |
| Defendant. | } |

## MEMORANDUM OPINION

This matter is before the court on Defendant Federal Trade Commission ("FTC")'s Motion to Dismiss. (Doc. # 8). In that Motion, the FTC moves to dismiss the complaint filed against it by the Board of Dental Examiners of Alabama ("Board") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, the FTC's Motion is due to be granted.

**I.      Factual and Procedural Background**

In 2017, the Board promulgated a new rule, amending the Alabama Code to prohibit the making of "digital images" or "digital impressions" of a patient's mouth without the "direct supervision" of a dentist who is on-site and physically present. Ala. Admin Code r. 270-x-3-.06, 270-x-3-.10. Pursuant to that new rule, the Board sent SmileDirectClub, LLC ("SmileDirectClub") a cease-and-desist letter, directing it to stop offering teledentistry services to Alabama customers because its "SmileShop" did not have a dentist who was physically present and on-site while its intra-oral digital imaging procedures were taking place. (Doc. # 1 ¶ 34). Several months later, Dr. Leeds and SmileDirectClub filed a complaint in this court,

asserting various claims for constitutional and Sherman Act violations. *See D. Blaine Leeds, DDS v. Board of Dental Examiners of Alabama*, No. 18-cv-01679 (N.D. Ala.) (Doc. # 1). The Board filed a Motion to Dismiss, *id.* (Doc. # 32), which was granted in substantial part but denied as to SmileDirectClub's dormant Commerce Clause and Sherman Act claims. *See id.* (Docs. # 57-58). Relevant to this Motion, the court rejected the Board's argument that the Sherman Act claims against the Board should be dismissed because the Board is entitled to state-action immunity from Sherman Act claims under *Parker v. Brown*, 317 U.S. 341 (1943) and its progeny.[1] *D. Blaine Leeds, DDS*, No. 18-cv-1679 (Doc. # 57 at 19). The Board subsequently appealed the denial of its Motion to Dismiss SmileDirectClub's Sherman Act claim to the Eleventh Circuit, and SmileDirectClub filed a cross-appeal. *See id.* (Docs. # 64, 74, 75). That appeal has been briefed, argued, and is currently pending interlocutory review.

While that appeal was pending, the FTC issued a Civil Investigative Demand ("CID") to the Board, requesting information relating to the passage and enforcement of the Board's rule prohibiting the making of "digital images" or "digital impressions" of a patient's mouth without the "direct supervision" of a dentist who is on-site and physically present. (Doc. # 1 ¶ 2). Although the Board at first assured the FTC that it intended to cooperate with the FTC's investigation, several months after the FTC issued the CID, the Board filed this suit seeking declaratory and injunctive relief. (Doc. # 8 ¶ 7-8). Specifically, the Board has requested the court to enjoin the FTC's CID and civil investigation and to declare that the Board is under no obligation to respond to the FTC's CID.[2] The Board claims that it is immune from FTC scrutiny

---

[1] In *Parker*, the Supreme Court "interpreted the antitrust laws to confer immunity on anticompetitive conduct by the States when acting in their sovereign capacity." *North Carolina State Bd. of Dental Examiners v. F.T.C.*, 135 S.Ct. 1101, 1110-12 (2015).

[2] The Board did not challenge the FTC's issuance of the CID before the FTC, even though statutes permit CID recipients to petition the FTC for an order modifying or setting aside a CID if the issuance of that CID violates "any constitutional or other legal right." 15 U.S.C. § 57b-1(f)(2).

under the doctrine of *Parker* immunity. (Doc. # 1). In response to the Board's Complaint, the FTC filed a Motion to Dismiss for lack of subject-matter jurisdiction and failure to state a claim. (Doc. # 8 at 1 (citing Fed. R. Civ. P. 12(b)(1), 12(b)(6)). In that Motion to Dismiss, the FTC asserted: (1) the Administrative Procedure Act ("APA") does not permit entities to challenge preliminary, nonfinal actions like the FTC's CID and civil investigation; (2) the Board has not exhausted its administrative remedies and therefore cannot seek judicial relief; and (3) even if the court were to conclude it had jurisdiction, it should decline to exercise that jurisdiction based upon its inherent discretion to not hear this case as it involves a declaratory action. (Doc. # 8 at 1-2). The Motion to Dismiss has been fully briefed by the parties. (Docs. # 8, 19, 23). While the Motion to Dismiss was pending, the court consolidated this matter with *D. Blaine Leeds, DDS*, No. 18-cv-1679 (N.D. Ala.) (Doc. # 20).

## II.    Standard of Review

Before considering whether the Board's suit for declaratory and injunctive relief should be dismissed on Rule 12(b)(6) grounds, the court should first consider whether it has jurisdiction to hear the Board's claims against the FTC. *See Jones v. State of Ga.*, 725 F.2d 622, 623 (11th Cir. 1984) ("When a district court has pending before it both a 12(b)(1) motion and a 12(b)(6) motion, the generally preferable approach, if the 12(b)(1) motion essentially challenges the existence of a federal cause of action, is for the court to find jurisdiction and then decide the 12(b)(6) motion."); *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

Federal courts are courts of limited jurisdiction "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)).

The jurisdiction of the federal court may be attacked facially or factually. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). In a facial challenge, a court assumes the allegations in the complaint are true and determines whether the complaint sufficiently alleges a basis for subject-matter jurisdiction. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Factual attacks, on the other hand, "challenge the 'existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Id.* (citation omitted). In considering a factual attack on subject-matter jurisdiction, the court is free to weigh the facts and is not constrained to view them in the light most favorable to the plaintiff. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009), cert. denied, 130 S.Ct. 3499 (2010). Regardless of whether a challenge is facial or factual, "[t]he burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." *Williams v. Poarch Band of Creek Indians*, 839 F.3d 1312, 1314 (11th Cir. 2016) (quoting *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005)). After careful review, and for the reasons explained below, the court concludes that this action should be dismissed for lack of jurisdiction.

**III.    Discussion**

    **A.    The Final Agency Action Requirement**

Although "actions taken by federal administrative agencies are [generally] subject to judicial review … federal jurisdiction is lacking when the administrative action in question is not 'final' within the meaning of 5 U.S.C. § 704." *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003) (citations omitted); *see Independent Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 594 (D.C. Cir. 2001) ("[T]he requirement of a final agency action has been considered jurisdictional. If the agency action is not final, the court therefore cannot reach the merits of the dispute." (quoting *DRG Funding Corp. v. Sec. of Hous. & Urban Dev.*, 76 F.3d 1212, 1214 (D.C. Cir. 1996))). Relevant to this suit, § 704 of the APA provides in pertinent part that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704. In other words, the APA permits judicial review of preliminary, procedural, or intermediate agency action only upon review of an associated final agency action unless otherwise permitted by statute.

    In *Bennett v. Spear*, the Supreme Court clarified the "final agency" requirement in § 704:

> As a general matter, two conditions must be satisfied for agency action to be 'final': First, the action must mark the 'consummation' of the agency's decisionmaking process,—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'

520 U.S. 154, 177-78 (1997) (internal citations omitted) (quoting *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948) and *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)); *see Darby v. Cisneros*, 509 U.S. 137,

5

144 (1993) ("[T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury ...." (quoting *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193 (1985))); *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992) ("The core question [in the finality determination] is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties."). In contrast, a non-final agency action is one that "does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action." *Nat'l Parks Conservation Ass'n*, 324 F.3d at 1237 (quoting *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 288 (5th Cir. 1999)).

The policy rationale behind § 704's final agency action requirement is compelling. An agency investigation or adjudicatory proceeding often involves many preliminary, non-final actions. Subpoenas or CIDs may be filed, documents requested, hearings held – all before a final determination is made. If the subjects of administrative investigations and adjudicatory proceedings were permitted to litigate non-final administrative actions, investigations or adjudicatory proceedings would become more protracted and full of stops and starts. The effect of this problematic approach would be to burden courts and administrative agencies, delay resolution of administrative proceedings, and prevent administrative agencies from correcting their mistakes. *See F.T.C. v. Standard Oil Co. of Ca.* ("*Standard Oil*")*,* 449 U.S. 232, 243 (1980) ("Judicial intervention into the agency process denies the agency an opportunity to correct its own mistakes and to apply its expertise. Intervention also leads to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been

unnecessary." (citations omitted)). By passing the APA, Congress wisely prevented such outcomes.

The Board seeks declaratory and injunctive relief asserting that it is not only immune from Sherman Act liability, but also that its immunity permits it to disregard an FTC investigation. (Doc. # 1 ¶ 3). According to the Board, because of its purported legal immunity, which again it asserts arises under *Parker*, it is under no obligation to respond to the FTC's CID. (Doc. # 1 ¶ 3). However, even if the Board enjoys the immunity it claims (which, at this point, is anything but clear), this court lacks jurisdiction over this matter because an investigation, or a CID issued pursuant to that investigation, is not a "final agency action" within the meaning of § 704.

Neither the FTC investigation nor the CID issued pursuant to that investigation passes either of *Bennett*'s two conditions. The court addresses each condition, in turn.

First, neither the initiation of the FTC's investigation nor the issuance of the CID "mark[s] the 'consummation' of the agency's decisionmaking process." *Bennett*, 520 U.S. at 178 (quoting *Chicago & Southern Air Lines, Inc.*, 333 U.S. at 113). The FTC's decisionmaking process has not yet concluded – in fact, the FTC's decisionmaking process remains in its early stages. *See LabMD, Inc. v. F.T.C.*, 776 F.3d 1275, 1278 (11th Cir. 2015) (determining the FTC's filing of a complaint does not satisfy *Bennett*'s first condition because "a complaint is just an initial document"); *see Nat'l Parks Conservation Ass'n*, 324 F.3d at 1238 ("[W]e cannot conclude that the [administrative agency] has taken any final action [because] [i]t is beyond any doubt that further administrative action is forthcoming.").

Second, the Board has failed to show the FTC has acted in such a way that "'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett*, 520

U.S. at 178 (citing *Port of Boston Marine Terminal Ass'n*, 400 U.S. at 71). The FTC has not yet determined whether the Board's rule promulgation violates the Sherman Act, nor has the FTC imposed any legal consequences for such a violation. *See LabMD, Inc.*, 776 F.3d at 1278 (concluding that "because the agency process is ongoing," "[n]o 'direct and appreciable legal consequences' flowed from either [administrative] action, and 'no rights or obligations have been determined'").

Usually the analysis would end here. That is, the Board cannot show the FTC implemented a final agency action under § 704. But, the court must now address the Board's arguments that the final agency action doctrine does not apply here because (1) the Board is immune from committing Sherman Act violations under *Parker* and that immunity is an exception to the final agency action doctrine and (2) immunity under *Parker* permits the Board to invoke the futility exception to the final agency action doctrine. After careful review, the court concludes that the Board's arguments are not convincing.

> i. *Parker* **immunity does not provide the Board with an exception to the final agency action doctrine under** *Leedom***.**

First, the Board contends that it need not show a "final agency action" under § 704 because an exception exists to the final agency action rule when an agency exercises authority in excess of its jurisdiction. (Doc. # 19 at 8-16). And, the Board maintains that as it is entitled to *Parker* immunity, the FTC's investigation and issuance of a CID fall outside of the FTC's jurisdiction and therefore can be challenged without establishing a final agency action.

The Board's argument arises under a narrow exception to the final agency action requirement, first set forth in *Leedom v. Kyne*, 358 U.S. 184 (1958). In *Leedom*, the Supreme Court reviewed whether the National Labor Relations Board ("NLRB")'s certification of a collective bargaining agent could be challenged in federal district court when that certification

order fell outside of the NLRB's power as defined by the National Labor Relations Act. 358 U.S. at 186-87. Because the certification order would never be subject to review as a final agency order, the Supreme Court determined that denying federal jurisdiction would result in the "sacrifice or obliteration of a right." *Id.* at 190. Ultimately, the Supreme Court held that the NLRB certification order was subject to federal jurisdiction because the agency violated a "clear and mandatory" prohibition and, as a result of that violation, deprived an entity of a "right" assured by Congress. 358 U.S. at 188-89. Since *Leedom*, various circuit courts have recognized that plaintiffs can challenge non-final agency actions in certain circumstances. The former Fifth Circuit, in an opinion binding on this court, interpreted the *Leedom* exception in the exhaustion context but cautioned that "[t]he extraordinary remedy of judicial intervention in agency proceedings still in progress is unavailable unless necessary to vindicate an unambiguous statutory or constitutional right, and only when this condition is satisfied will a court look to the general body of equitable jurisprudence and other appropriate sources for the purpose of fashioning relief." *American General Ins. Co. v. F.T.C.*, 496 F.2d 197, 200 (1974) (citation omitted).[3] The only other precedent binding on this court was a case arising out of a suit involving the NLRB that also indicates that the exception should only be applied in extraordinary circumstances. *See Florida Bd. of Business Regulation Dept. of Business Regulation, Div. of Pari-Mutuel Wagering v. National Labor Relations Board*, 686 F.2d 1362, 1368 (11th Cir. 1982) (recognizing *Leedom* can permit pre-election challenges to NLRB orders in "extraordinary circumstances"). Other circuits have also interpreted the *Leedom* exception as applying only in extraordinary circumstances. *See, e.g.*, *United States Dep't of Interior v. Federal Labor Relations Authority*, 1 F.3d 1059, 1061 (10th Cir. 1993) (emphasizing the *Leedom* exception is "very

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), the en banc Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

limited*"* and should be "invoked only in exceptional circumstances"). And, these circuits have determined that unless the agency's action is certainly in violation of a statute, *Leedom* does not permit courts to review non-final agency actions. *See, e.g.*, *General Finance Corp. v. F.T.C.*, 700 F.2d 366, 370 (7th Cir. 1983) (concluding *Leedom* did not provide an exception to the final agency action rule in the matter under review because, in part, "it is uncertain whether the [FTC] exceeded its authority").

No such extraordinary circumstance justifying application of the *Leedom* exception exists here. The Board cannot show that the FTC violated a "clear and mandatory" prohibition by issuing the CID in violation of the doctrine of *Parker* immunity. *Leedom*, 358 U.S. at 188. As the Supreme Court has held, a nonsovereign actor controlled by active market participants (such as the Board) enjoys *Parker* immunity only if it satisfies both elements of the two-part test set forth in *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97 (1980). *North Carolina State Bd. of Dental Examiners*, 135 S.Ct. at 1110-12. Under that two-part test, anticompetitive conduct by a nonsovereign actor receives *Parker* immunity only if (1) the state has articulated a clear policy to allow the anticompetitive conduct; and (2) the state provides active supervision of the anticompetitive conduct. *Id.* at 1112. The court previously has concluded that the Board has not shown that it is entitled to *Parker* immunity because (1) the Board has not established the Alabama legislature clearly prohibited the use of SmileDirectClub's technology without a dentist present and (2) the Board has not proven the state actively reviewed and approved the Board's purportedly anticompetitive policy. *See D. Blaine Leeds, DDS*, No. 18-cv-01679 (N.D. Ala.) (Doc. # 57 at 27-35). The record in this action provides no more indication that the Board is entitled to *Parker* immunity than the record of the suit this action is now consolidated with. Because it is unclear whether the Board is entitled to

*Parker* immunity, the Board cannot point to a "clear and mandatory" prohibition violated by the FTC. *Leedom*, 358 U.S. at 188.

But, even if the Board were able to show the FTC violated a "clear and mandatory" prohibition (and, to be clear, it has not), the *Leedom* exception to final agency action is still inapplicable here because the Board cannot show the FTC violated a "right" assured to the Board by Congress. 358 U.S. at 188-89. In *Leedom*, a failure to extend federal jurisdiction to the certification order at issue would have resulted in "a sacrifice or obliteration of a right which Congress' has given professional employees." 358 U.S. at 190. That is, the order would have otherwise escaped review. That is simply not the case here. The United States Code permits CID recipients to petition the FTC for an order modifying or setting aside a CID if the issuance of that CID violates "any constitutional or other legal right." 15 U.S.C. § 57b-1(f)(2). Because a statutory mechanism exists for the Board to challenge the FTC's issuance of the CID (including on grounds of *Parker* immunity), exercising federal jurisdiction is unnecessary to prevent a violation of a right assured to the FTC by Congress. This provides another reason why the CID issuance falls outside the *Leedom* exception.[4] *See Nyunt v. Chairman, Broadcasting Bd. of Governor*, 589 F.3d 445, 449 (D.C. Cir. 2009) (determining the *Leedom* exception to final agency action should only apply when "there is no alternative procedure for review of the [] claim").

---

[4] A determination that the FTC violated a right assured to the Board by Congress would also entail an extension of the *Leedom* exception to implied rights. *Parker* immunity arose out of the Court's belief that, in passing the Sherman Act, Congress intended "to respect the federal balance and to 'embody in the Sherman Act the federalism principle that the States possess a significant measure of sovereignty under our Constitution.'" *North Carolina State Bd. of Dental Examiners*, 574 U.S. at 503 (quoting *Community Communications Co. v. Boulder*, 455 U.S. 40, 53 (1982)). Ultimately, the court finds it unnecessary to determine whether the *Leedom* exception extends to implied rights because the Board had the opportunity to challenge the CID issuance before the FTC under statute.

### ii. *Parker* immunity does not provide the Board with an exception to the final agency action doctrine under the futility exception.

Next, the Board argues that, because the court must "assum[e] the Board's allegations of entitlement to immunity from suit are true … at this stage," the Board need not satisfy the final agency action rule because of a futility exception to the final agency action rule. (Doc. # 19 at 16). Essentially, the Board argues that when an investigation target has a potentially valid defense, it should be exempt from investigation until a court adjudicates the merits of the defense. (Doc. # 19 at 16-17). Its reasoning goes something like this: because the court must at this stage assume the immunity defense asserted by the Board will ultimately prove valid and the FTC will be precluded from later bringing an enforcement action against it, the FTC's investigation is therefore "futile" and its investigatory requests need not be complied with because "the law does not require a futile act." (Doc. # 19 at 16). But this is quite plainly an incorrect statement of the law and cannot be squared with basic principles of administrative law. Investigation targets cannot thwart an agency's investigation and force it into federal court to litigate, in advance, a potential defense. *See Standard Oil,* 449 U.S. at 243 (warning that judicial review of agency action "should not be a means of turning prosecutor into defendant before adjudication concludes").

Upon careful analysis, the Board's argument suffers from at least a couple of fatal deficiencies. First, the Board misinterprets the standard of review applicable here. The court is not required to presume that the Board's claim to *Parker* immunity is valid. "The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." *Williams*, 839 F.3d at 1314 (quoting *Sweet Pea Marine, Ltd.*, 411 F.3d at 1247)). And, even if the burden of proving jurisdiction did not rest with the Board (and, to be clear, it does), the Board's assertion that it is entitled to *Parker* immunity is not entitled to any presumption of validity

because that assertion is a legal conclusion, not a factual assertion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) ("[P]laintiffs' assertion of an unlawful agreement was a 'legal conclusion' and, as such, was not entitled to the assumption of truth." (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). Because the court is not required to presume the Board's claim of *Parker* immunity is true (and, as noted above, whether the Board is even subject to *Parker* immunity remains very much in dispute), the Board cannot show that waiting until the FTC implements a final action is futile.

Moreover, and just as importantly here, there is likely no actual futility exception to the final agency action doctrine. The Board's attempt to conflate the final agency action doctrine with the exhaustion requirement (by asserting that a futility exception exists for both) is unavailing. The final agency action doctrine and the exhaustion requirement, although they share some distant jurisprudential kinship, are materially different in important respects. *See Darby v. Cisneros*, 509 U.S. 137, 144 (1993) ("We have recognized that the judicial doctrine of exhaustion of administrative remedies is conceptually distinct from the doctrine of finality"); *Williamson Cty. Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 192 (1985) (citations omitted) ("The question whether administrative remedies must be exhausted is conceptually distinct, however, from the question whether an administrative action must be final before it is judicially reviewable."), overruled on other grounds by *Knick v. Township of Scott, Pa.*, 139 S.Ct. 2162 (2019). The futility exception is commonly applied in the exhaustion context. *See, e.g.*, *Clear Sky Car Wash, LLC v. City of Chesapeake, Va.*, 910 F. Supp. 2d 861, 882 (E.D. Va. 2012). But, it is unclear if any court has applied a futility exception to the final agency action requirement. *See Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 173 F. Supp. 2d 41, 51-52 (D.D.C. 2001) ("[P]laintiff cites no case for the proposition

13

that futility excuses the need for final agency action."). Although the Board provides examples of courts applying the futility exception to the exhaustion requirement set forth in § 704, and of courts applying the futility exception to taking cases under the Due Process Clause, the Board has not pointed to any case law on the futility exception relevant to final agency action. As such, the court does not find the Board's futility argument persuasive and therefore declines to extend the futility exception to § 704's final agency action requirement.

### B. The Exhaustion Requirement

The doctrine of exhaustion of administrative remedies provides that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938); *see McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("Where Congress specifically mandates, exhaustion [of administrative remedies] is required."), superseded by statute on other grounds. The FTC contends that the Board failed to exhaust its available administrative remedies by failing to raise its claim of *Parker* immunity before the FTC and, owing to that failure, the Board's suit must be dismissed. (Doc. # 8 at 10-12). "The burden of demonstrating futility is on the party seeking exemption from the exhaustion requirement." *M.T.V. v. DeKalb Cty. School Dist.*, 446 F.3d 1153, 1159 (11th Cir. 2006) (citing *Honig v. Doe*, 484 U.S. 305, 327 (1988)).

Pursuant to statute, within twenty days of a CID being issued, a CID recipient may petition the FTC for an order modifying or setting aside that CID if the issuance violates "any constitutional or other legal right." 15 U.S.C. § 57b-1(f)(2). The Board does not dispute that it never challenged the FTC's CID issuance by petitioning the FTC. Nor does it contend that it could not have raised its claim of *Parker* immunity before the FTC. The Board's only argument with respect to the APA's exhaustion requirement is that exhausting its administrative remedies

14

would have been futile because the FTC is unable to take further administrative action in light of the Board's immunity from Sherman Act scrutiny under *Parker*. (Doc. # 19 at 16-20).

Unlike the final agency action requirement, the futility doctrine permits the target of an administrative action to pursue relief in federal court even if the exhaustion requirement has not been met. *See Tesoro Refining and Marketing Co. v. F.E.R.C.*, 552 F.3d 868, 874 (D.C. Cir. 2009). But, the Board's argument here misunderstands the futility doctrine. "In order to come under the futility exception, [a plaintiff] must show that it is certain that their claim will be denied on [administrative review], not merely that they doubt [administrative review] will result in a different decision." *Smith v. Blue Cross & Blue Shield United of Wisc.*, 959 F.2d 655, 659 (7th Cir. 1992). The Board has not made the appropriate showing.

The Board argues that petitioning the FTC for relief would have been futile because, regardless of the outcome of that proceeding, the FTC would not have been able to take action against it because of *Parker* immunity. But, application of the futility doctrine to the exhaustion requirement requires the subject of an administrative action to show that the asserted claim would be denied on administrative review, not that later actions by the administrative agency would prove futile. It is irrelevant whether the FTC could later undertake further administrative actions against the Board.[5] The only relevant issue here is whether the FTC would have certainly denied the Board's claim of *Parker* immunity. And, because the Board could have raised its

---

[5] At the conference scheduled to discuss this case (Docs. # 24, 25), counsel for the Board indicated that, for efficiency purposes, the court should hear this case rather than wait for the FTC to later file in federal court to enforce the CID. True, the FTC can compel compliance with a CID only by petitioning a district court for an order enforcing the CID. 15 U.S.C. § 57b-1(e). But, whether this court may later have jurisdiction over that matter is not pertinent to whether this court currently has jurisdiction over this litigation under § 704.

15

*Parker* immunity claim before the FTC (but has not done so), nor has it established here that such claim would certainly fail, the Board's claim fails for lack of exhaustion.[6]

## IV.     Conclusion

Because the Board's Complaint does not satisfy the APA's final agency action requirement or exhaustion requirement, the FTC's Motion to Dismiss (Doc. # 8) is due to be granted.[7] A separate order will be entered dismissing this action.

**DONE** and **ORDERED** this February 2, 2021.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

[6] Relatedly, the court is doubtful that the Board has satisfied the APA's requirement that the entity challenging an administrative action in federal court must show it has "no other adequate remedy in court." 5 U.S.C. § 704.

[7] If the court were to not dismiss the Board's suit on jurisdictional grounds, the FTC requests, in the alternative, that the court decline to exercise its discretion to hear this case. (Doc. # 8 at 15). District courts are endowed with "unique and substantial" discretion to hear declaratory actions. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The court has substantial doubts as to whether exercising discretion over a non-final administrative action would be appropriate. And, at least one other court has declined to do so. *See Endo Pharmaceuticals Inc. v. F.T.C.*, 345 F. Supp. 3d 554, 563-66 (E.D. Pa. 2018). But, the court need not address that question of discretionary review at this time.